**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **MICHAEL CHARLAND, JR.,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. 3:08-CV-1072-B (BF) |
| § | |
| § | |
| **MICHAEL J. ASTRUE,** § | |
| **COMMISSIONER OF THE SOCIAL** § | |
| **SECURITY ADMINISTRATION,** § | |
| § | |
| **Defendant.** § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

On June 25, 2008, the District Court referred the social security appeal of Michael Charland, Jr. ("Plaintiff"), filed June 25, 2008, to the United States Magistrate Judge for hearing, if necessary, and recommendation. This is an appeal from the final decision of the Defendant, Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI, respectively, of the Social Security Act ("the Act"), 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3). *See* 42 U.S.C. § 405(g). The court has considered Plaintiff's brief, filed October 2, 2008, the Commissioner's response to Plaintiff's brief, filed November 3, 2008, and Plaintiff's reply to Commissioner's response to Plaintiff's brief, filed November 13, 2008, along with the record in connection with the pleadings. For the reasons stated, the court recommends that the final decision of the Commissioner be AFFIRMED.

## **STATEMENT OF THE CASE**[1]

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on March 15, 2005, alleging an onset of disability for disability benefits on his date of birth, June 10, 1985, and for Supplemental Security Income on March 15, 2005, due to attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, and "learning problems." (Tr. 13, 62-74, 96-101.)[2] Plaintiff was last insured on September 30, 2007. Plaintiff's applications were initially denied and denied again upon reconsideration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). The hearing was held on July 18, 2007 where Plaintiff and a vocational expert ("VE") testified before the ALJ. (Tr. 25-28, 34-36, 593-615.)

The ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. (Tr. 14-15.) The ALJ also found that Plaintiff had the following severe impairments: (1) back pain, (2) knee pain, and (3) bipolar disorder. Tr. 15. However, the ALJ found that such impairments failed to meet or equal a listed impairment for presumptive disability under the *Code of Federal Regulations*. (Tr. 15.)

After finding that Plaintiff had no past relevant work, and upon consideration of the VE's testimony, the ALJ found that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy – specifically as a bench packager, hand laborer, and sorter. (Tr. 20-21.) As a result, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (Tr. 21.) The Appeals Council's April 24, 2008 denial of Plaintiff's request for review rendered the

---

[1] The statement of the case is taken from both Plaintiff's Brief in Support of Claim, filed October 2, 2008, and Defendant's Brief, filed November 3, 2008, as well as the September 26, 2007 decision of the Administrative Law Judge.

[2] References to the certified administrative transcript are abbreviated "Tr."

ALJ's September 26, 2007 decision the Commissioner's final administrative decision for judicial review. (Tr. 6-9, 10-22.)

## STANDARD OF REVIEW

A claimant must prove that he is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are that:

(1) an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings;

(2) an individual who does not have a "severe impairment" will not be found to be disabled;

(3) an individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors;

(4) if an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made; and

(5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) (paraphrasing 20 C.F.R. § 404.1520(b)-(f)).

3

The burden of proof lies with the claimant to prove disability under the first four steps of the five-step inquiry. *Leggett*, 67 F.3d at 564. The burden of proof shifts to the Commissioner at step five of the inquiry to prove that other work, aside from the claimant's past work, can be performed by the claimant. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989)). If the Commissioner demonstrates that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits was supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## ISSUES

The Court must determine whether substantial evidence and relevant legal standards support the Commissioner's finding that Plaintiff was not disabled. Plaintiff raises the following issues: (1) whether the ALJ's finding concerning Plaintiff's residual functional capacity ("RFC") was supported by substantial evidence; (2) whether the ALJ erred in failing to make a finding as to whether Plaintiff was able to maintain employment; (3) whether the ALJ's finding that Plaintiff can perform

4

other jobs is supported by substantial evidence; and (4) whether the ALJ erred in his evaluation of Plaintiff's credibility.

## ANALYSIS

### The Commissioner's Finding Concerning Plaintiff's Residual Functional Capacity (RFC) Was Supported by Substantial Evidence.

The ALJ found that:

> The claimant retains the residual functional capacity, over a sustained period of time, to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday, periodically alternating sitting and standing to relieve pain or discomfort; further limited by no ladders, ropes, or scaffolds; and only occasional balancing or kneeling; but capable of frequent crouching, crawling, and stooping; with no manipulative, visual/communicative, or environmental limitations; and with the ability to understand, remember, and carry out short, simple instructions; make judgments on simple work-related decisions; interact appropriately with supervisors and co-workers; and respond appropriately to usual work pressures and changes in the work setting; in jobs requiring only occasional contact with the public.

(Tr. 15-16.) The ALJ also found Plaintiff to have the following severe combination of impairments: back pain, knee pain, and bipolar disorder. (Tr. 15.) If an ALJ finds a medically-severe combination of impairments, the combined impact of the impairments must be considered throughout the disability determination process. *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000) (citing 20 C.F.R. § 404.1523). The ALJ may not "pick and choose" only the evidence that supports his or her position but, instead, must consider all the evidence in the record. *Loza*, 219 F.3d at 394.

It is the ALJ's duty to fully and fairly develop the facts of a claim for benefits. If the ALJ fails in this duty, he or she lacks sufficient facts on which to make an informed decision and

5

therefore, the decision is not supported by substantial evidence. *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989). This court will reverse the ALJ's decision for failure to adequately develop the record only if Plaintiff shows that he was prejudiced as a result. *Bowling v. Shalala*, 36 F.3d 431, 437 (5th Cir. 1994).

The ALJ is not statutorily or judicially obligated to explicitly list all the evidence he or she takes into account; however, the ALJ's decision must include an explanation of the weight given to the opinions of state agency medical or psychological consultants or other program physicians or psychologists. *Hammond v. Barnhart*, No. 04-20107, 2005 WL 548253, at *2 (5th Cir. Mar. 8, 2005) (citing 20 C.F.R. § 404.1527 (f)(2)(ii)). "The ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it. . . ." *Hammond*, 2005 WL 548253, at *3. "[P]rocedural perfection in administrative proceedings is not required." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Procedural improprieties will constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Id.*

Plaintiff contends in his brief that "[t]he ALJ addressed some, but not all, of the findings of Dr. Anderson's examination." Furthermore, Plaintiff alleges that "[b]ecause the ALJ failed to consider all of the limitations indicated by Dr. Anderson, his RFC does not include all limitations supported by the record." *Hammond*, however, proves Plaintiff's arguments ineffective. The court in *Hammond* stated that the ALJ is not obligated to list every piece of evidence that is taken into account nor is the ALJ's failure to mention certain evidence an indication of a failure to consider the evidence.

Plaintiff next argues that the ALJ erred in not discussing and explaining the weight given to the opinions and findings of the State agency medical consultants and physicians regarding Plaintiff's mental RFC. However, the ALJ specifically stated that he considered the entire record in his findings. (Tr. 14.) The ALJ also stated that his findings as to Plaintiff's RFC were supported by the objective medical evidence and the claimant's medical treatment history. (Tr. 16.)[3] Yet, even if the ALJ had erred in not specifically discussing and explaining the weight given to the opinions and findings of the state agency medical consultants regarding Plaintiff's mental RFC, this court concludes that the ALJ would have committed harmless error.

The ALJ concluded that the evidence of Plaintiff's mental impairment most closely resembled Organic Mental Disorder and Affective Disorder. (Tr. 17.) The ALJ also considered evidence of borderline intellectual functioning. *Id.* The ALJ further concluded that Plaintiff's symptoms medically substantiated the presence of a mental impairment, which corresponded to the "A" criteria. *Id.* The ALJ then evaluated the "B" and "C" criteria to determine whether Plaintiff had functional limitations caused by mental impairment and whether the limitations were compatible with the ability to work, considering both medical and non-medical evidence. *Id.* The state agency medical consultants conducted the same evaluations regarding Plaintiff's functional limitations.

With regard to the first area of the "B" criteria, "Activities of Daily Living," the ALJ concluded that Plaintiff had only moderate, not marked or extreme, limitations in his daily activities

---

[3] In his conclusion that Plaintiff did not have a medically determinable impairment or combination of impairments that met or medically equaled any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ gave substantial weight to the opinions of the state agency consultants, who reviewed the evidence at the initial and reconsideration stages of Plaintiff's application, and found their opinions to be well supported by and consistent with the medical evidence. (Tr. 15.)

7

due to mental impairment. *Id.*[4] State agency medical consultant, Robert White, Ph.D., ("Dr. White") concluded that Plaintiff had no limitation regarding restrictions of activities of daily living. *Id.* State agency medical consultant, Stephanie Judice, M.D., ("Dr. Judice") found Plaintiff to have only a mild degree of limitation regarding restrictions of daily living activities. (Tr. 551.)

With respect to the second area of the "B" criteria, "Difficulties in Maintaining Social Functioning," the ALJ concluded that Plaintiff had only moderate limitations due to mental impairment. (Tr. 18.) Dr. White found no limitations as to difficulties in maintaining social functioning. (Tr. 516.) Dr. Judice found Plaintiff to have only mild difficulty maintaining social functioning. (Tr. 551.)

Regarding the third area of the "B" criteria, "Difficulties in Maintaining Concentration, Persistence, or Pace," the ALJ, Dr. White, and Dr. Judice all concluded that Plaintiff had only moderate limitations. (Tr. 18.) The ALJ noted that he found no evidence of Plaintiff's "inability to complete tasks without extra supervision or assistance." *Id.*

The final area evaluated was "Episodes of Decompensation," each of extended duration. The ALJ found evidence of one remote episode of decompensation but found no evidence of repeated episodes that would exclude Plaintiff from obtaining gainful employment. *Id.* Both Dr. White and Dr. Judice found no limitation concerning any episodes of decompensation of extended duration. (Tr. 516, 551.) Neither the ALJ, Dr. White, nor Dr. Judice found any evidence that suggest that Plaintiff's impairment meets the "C" criteria.

---

[4] Marked and extreme degrees of limitation are the degrees of limitation that satisfy the functional criterion. (Tr. 516.)

8

Therefore, if the ALJ failed to articulate the weight given to the opinions of the state agency medical consultants, this court finds that such failure would be harmless. *See Hammond v. Barnhart*, No. 04-20107, 2005 WL 548253, at *3 (5th Cir. Mar. 8, 2005) (noting that even though the ALJ erred in failing to explicitly weigh the evidence, the opinions of the state agency medical consultants seemed to confirm the opinions of the other medical experts). The medical experts who examined Plaintiff all seem to agree with the ALJ's conclusion that Plaintiff is capable of participating in gainful activity. Dr. White, Dr. Judice, and M.J. Hernandez, M.D. ("Dr. Hernandez") all concluded that Plaintiff's alleged limitations were not fully supported by the evidence of record. (Tr. 518, 538, 553.) Furthermore, Dr. White and Dr. Judice both concluded that Plaintiff could "understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in a routine work setting." (Tr. 504, 538.) The findings of Mike M. Lee, M.D. ("Dr. Lee") and medical consultant Moira Dolan, M.D. ("Dr. Dolan") support those of Dr. White, Dr. Judice, and Dr. Hernandez. (Tr. 533, 560-566.) Even if this court believed that the state agency medical consultants' opinions undermined the ALJ's findings, which the court does not, the opinions would not do so to the degree necessary for the court to overturn the ALJ's determination. *See Hammond*, 2005 WL 548253, at *3.

After carefully scrutinizing the record, this court finds that the ALJ, and thus the Commissioner's final decision, relied on substantial evidence in reaching its decision concerning Plaintiff's RFC.

**The ALJ Did Not Err by Failing to Make a Finding
as to Whether Plaintiff Was Able to Maintain Employment.**

9

As mentioned, the definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986) (citing 42 U.S.C. § 423(d)(1)(A)). The statute requires that the impairment last for a continuous period; it does not require that a claimant be unable to engage in work during the entire 12 months. *Singletary*, 798 F.2d at 821. Symptom-free intervals do not necessarily negate a finding of disability when a mental disorder is the basis of a claim. *Id.* "[A] person with a mental impairment may be unable to engage in competitive employment, as his ability to work may be sporadically interrupted by unforeseeable mental setbacks." *Id.*

"A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs. . . ." *Id.* at 822. A determination that the claimant can hold whatever job he finds for a significant period of time is also required. *Id.* "A determination that a claimant is unable to continue working for significant periods of time must, however, be supported by more than a claimant's personal history; it must also be supported by medical evidence." *Id.*; *See* 20 C.F.R. §§ 404.1546 and 404.1560. "[C]onflicts in the evidence, including those arising in medical opinions, are to be resolved by the [Commissioner]. . . ." *Singletary*, 798 F.2d at 822 (citing *Laffoon v. Califano*, 558 F.2d 253, 254-55 (5th Cir. 1977)). The [Commissioner's] determination must be upheld if it is supported by substantial evidence. The whole record must be considered. *Singletary*, 798 F.2d at 822.

Additionally, the Fifth Circuit has noted that:

10

> [I]nherent in the definition of RFC is the understanding that the claimant can maintain work at the level of the RFC. Therefore, absent evidence that a claimant's ability to maintain employment would be compromised despite his ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular basis was inherent in the definition of RFC, the Fifth Circuit does not require a specific finding that a claimant can maintain employment.

*King v. Barnhart*, 372 F. Supp. 2d 932, 947 (5th Cir. 2005) (citing *Dunbar v. Barnhart*, 330 F.3d 670, 671 (5th Cir. 2003)).

After review of the record, this court concludes that there was substantial evidence to support the Commissioner's findings and that no legal error was made by the Commissioner in not making a separate finding as to whether Plaintiff could maintain employment. The evidence of record does not suggest that Plaintiff's ability to maintain employment would be compromised despite his ability to initially perform employment. Likewise, the evidence of record does not indicate that the ALJ did not appreciate that an ability to perform work on a regular basis was inherent in the definition of RFC.

Plaintiff contended that he could not keep a job due to his back pain and because he was "slow to process information." (Tr. 32.) Plaintiff also alleged that he was limited by scoliosis, ADHD, knee pain, and bipolar disorder. (Tr. 96,103.) However, there is insufficient medical evidence to support a determination that Plaintiff would not be able to continue working for significant periods of time.

After conducting a psychological consultative examination of Plaintiff in December, 2004, Dr. Anderson concluded that "[n]o current mental health problems were indicated." (Tr. 496.) Furthermore, Dr. Anderson noted that Plaintiff did not see a need for medication for any type of mental disorder and denied any problems controlling his temper. *Id.* Later, after an April, 2005

clinical interview with mental status examination, Dr. Anderson opined that Plaintiff's motivation to work appeared poor and that Plaintiff was possibly malingering in an effort to obtain social security benefits. (Tr. 529.) In addition, Dr. White and Dr. Judice both concluded that Plaintiff could "understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in a routine work setting." (Tr. 504, 538.) Dr. Lee concluded that Plaintiff's mood and affect were appropriate and that his mental status was normal. (Tr. 533.)

Although Plaintiff was re-diagnosed with bipolar disorder in 2006, this diagnosis was inconsistent with the findings of the abovementioned medical experts. These conflicts in medical opinions were resolved by the Commissioner within the Commissioner's discretion. The initial findings of Dr. Anderson and the opinions of Dr. White, Dr. Judice, and Dr. Lee provide substantial evidence that is relevant and sufficient for a reasonable mind to accept as adequate to support the Commissioner's conclusion. Therefore, Plaintiff's ability to maintain employment was subsumed in the Commissioner's RFC determination.

### The ALJ's Finding that Plaintiff Could Perform Other Jobs That Exist in the Naitonal Economy is Supported by Substantial Evidence.

The burden of proof lies with the claimant to prove disability under the first four steps of the five-step inquiry. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The burden of proof shifts to the Commissioner at step five of the inquiry to prove that other work, aside from the claimant's past work, can be performed by the claimant. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). If the Commissioner demonstrates that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

This case reached step five of the five-step inquiry. To determine if there was work, other than Plaintiff's past work, that Plaintiff could perform and to meet the required burden of proof, the ALJ put forth the following hypothetical question to the VE:

> Assume for me an individual the same age, education and vocational history as claimant. Further assume that this hypothetical individual would have the following limitations: lift and carry occasionally twenty pounds, lift and carry frequently ten pounds; stand and walk about six hours in an eight-hour day; sit about six hours in an eight-hour day, with the ability to periodically alternate, alternating sitting and standing as needed to relieve pain or discomfort; [n]o climbing of scaffolds, ropes or ladders; [o]ccasionally balancing, occasional kneeling, frequent crouching, crawling and stooping; [n]o manipulative limitations, no visual or communication limitations; [n]o environmental limitations; [w]ould be able to understand, remember and carry out sort [sic], simple instructions in a simple and routine work environment with only occasional public contact, but in a simple and routine work environment could interact appropriately with supervisors, co-workers, respond to usual work pressures and respond appropriately to changes in a work setting. With those limitations . . . would there be other jobs in the national or other regional economy that such a person could perform?

(Tr. 611-12.) The VE responded that the following jobs existed in significant numbers in the national economy and that such a person could work as: (1) a packager at the light level, (2) a non-complex assembler or hand laborer at the light level, (3) an unskilled sorter. (Tr. 612.) "The value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) (citing *Fields v. Bowen*, 805 F.2d 1168 (5th Cir. 1986)). In *Boyd v. Apfel*, the court stated:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably **all disabilities** of the claimant **recognized by the ALJ**, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational

13

> expert any purported defects in the hypothetical questions . . . a determination of non-disability based on such a defective question cannot stand.

*Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (citing *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994).

After review of the record, there is sufficient evidence to suggest that the ALJ's hypothetical question posed to the VE reasonably incorporated all of Plaintiff's disabilities recognized by the ALJ. Dr. Dolan concluded that Plaintiff could occasionally lift and/or carry up to 50 pounds; frequently lift and/or carry up to 25 pounds; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; and sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. (Tr. 560.) Dr. Dolan also concluded that Plaintiff's strength was normal, that his fine and gross motor, neurological, and sensory abilities were intact, and that his reflexes were intact as well. *Id.* Dr. Lee concluded that Plaintiff had no loss of motion of the upper extremities, that he had no problem picking up a pen from the floor, and that his grip strength was strong. Additionally, Dr. Lee found that Plaintiff had no problem using his hands to feel and to reach. Dr. Judice concluded that Plaintiff had memory and concentration impairments of a moderate level. (Tr. 553.) Dr. Judice, along with Dr. White, also concluded that Plaintiff retained the ability to understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in a routine work setting. (Tr. 504, 538.) Furthermore, Plaintiff admitted that although he had some trouble getting along with his siblings, it was only occasional. (Tr. 122.)

Without re-weighing the evidence or substituting its own judgment, and in consideration of the deference afforded to the Commissioner, this court concludes that there was sufficient evidence

to support the Commissioner's final decision that Plaintiff could perform other jobs that exist in the national economy.

### The ALJ Did Not Err in His Evaluation of Plaintiff's Credibility.

According to Social Security Ruling (SSR) 96-7p, "the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true." SSR 96-7p states:

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record . . . . The finding on credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. In making a finding about the credibility of an individual's statements, the adjudicator need not totally accept or totally reject the individual's statements. Based on a consideration of all of the evidence in the case record, the adjudicator may find all, only some, or none of an individual's allegations to be credible.

SSR 96-7p. Furthermore, the amount of pain a claimant alleges to be disabling is a question for the ALJ to answer since the ALJ has the primary responsibility of resolving conflicts in the evidence. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991) (citing *Scharlow v. Schweiker*, 655 F.2d 645 (5th Cir. 1981)). "The ALJ enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir. 1994).

In his decision, the ALJ found that Plaintiff's daily activities included, among other things, preparing meals, performing light housework, going for short walks, shopping on his own, going to parties, visiting family members, working on his car, driving around, performing household repairs, going fishing, and assisting his wife with her medical problems. (Tr. 19.) These findings were supported by the record. The ALJ believed that these and other findings called Plaintiff's credibility into question because they contradicted his claim of continuous back and knee pain. (Tr.

20.) Ultimately, the ALJ believed that some but not all of Plaintiff's allegations were credible. This was within the ALJ's discretion, as stated in SSR 96-7p. The ALJ found that Plaintiff's exertional and nonexertional capabilities were compromised but not to the degree that Plaintiff alleged. (Tr. 20.) Since the ALJ had the opportunity to perceive Plaintiff first-hand, the ALJ was well within his discretion in resolving conflicts in the evidence.

Plaintiff argues that the ALJ erred in finding that Plaintiff was noncompliant with his prescribed medications because Plaintiff could not afford them. Plaintiff also contends that the ALJ should not have assumed that if Plaintiff were to stop smoking, he would be able to afford prescription pain medication, asserting that there is no evidence to suggest that the cost difference between smoking and affording prescription medications is similar. Finally, Plaintiff argues that the ALJ was incorrect in stating that Plaintiff did not exhibit pain during the administrative hearing, contending that Plaintiff testified that his back pain was at the level of seven and his knee pain was a level six on a scale of one to ten.

With respect to Plaintiff argument that he could not afford medications, the ability to afford treatment is relevant only when the treatment in question would remedy an otherwise disabling impairment. The record does not show that medication would remedy an otherwise disabling impairment in this case. Even if the ALJ erred in assuming that Plaintiff could afford prescription medications if he stopped smoking and in finding that Plaintiff did not exhibit pain during the administrative hearing, the errors were, at most, harmless. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003); *See also Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (harmless error analysis). The ALJ relied very little on these two conclusions. Instead, the ALJ heavily relied on

16

medical evidence in the record from a variety of sources which showed that Plaintiff was not disabled. Plaintiff's arguments in this regard are without merit.

## CONCLUSION

After a thorough review of the record, this court concludes that substantial evidence supports the Commissioner's decision to deny Plaintiff's claims for Disability Insurance Benefits and Supplemental Security Income and that the decision is not the result of prejudicial legal error. The Commissioner met his burden to show that Plaintiff is capable of performing jobs that exist in substantial numbers in the national and local economies, despite his severe impairments.

## RECOMMENDATION

The court recommends that the District Court affirm the Commissioner's decision.

IT IS SO RECOMMENDED, this 5th day of August, 2009.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).